**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF NEW YORK**

In re:

DEBRA J. ASHER,

Case No. 8-11-78837-reg

                              Debtor.

Chapter 7

RICHARD STERN, Chapter 7 Trustee,

                              Plaintiff,

-- against --

Adv. Pro. No. 8-12-08097-reg

AMERICAN HOME MORTGAGE SERVICING, INC., as successor servicing agent to Option One Mortgage Corporation, and DEUTSCHE BANK NATIONAL TRUST COMPANY as TRUSTEE for the SOUNDVIEW HOME LOAN TRUST 2005-OPT3 ASSET BACKED CERTIFICATES, SERIES 2005-OPT3,

                              Defendants.

**MEMORANDUM DECISION**

I.    <u>**INTRODUCTION**</u>

        The matter before the Court is pursuant to the complaint filed by Richard L. Stern (the

"Plaintiff"), the Chapter 7 Trustee of the estate of Debra J. Asher (the "Debtor"). The Defendants

are Deutsche Bank National Trust Company ("DBNTC"), in its capacity as trustee for the

Soundview Home Loan Trust 2005–OPT3 Asset Backed Certificates, Series 2005–OPT3 (the

"Soundview Trust"), and Homeward Residential, Inc. ("Homeward") (collectively, the "Defendants"), incorrectly named "American Home Mortgage Servicing, Inc." in the complaint and the servicing agent for the relevant mortgage (the "Option One Mortgage"). The Defendants filed a motion for summary judgment (the "Motion") to dismiss the Plaintiff's complaint.

Before the Court is the issue of the proper interpretation of section 544(a)(3) of the Bankruptcy Code (the "Code") (Title 11 of the United States Code).[1] In the complaint, the Plaintiff alleges that he is entitled to avoid the Option One Mortgage pursuant to § 544(a)(3) even though this particular adverse interest had been properly recorded prior to the Debtor's filing. According to the Plaintiff, a trustee is rendered "a bona fide purchaser of real property" ("BFP"),as a matter of federal law, § 544(a)(3) fully preempting all contrary state regulations and common law. By virtue of the Code, the Plaintiff argues, he is both a trustee and a BFP of the Debtor's property. Consequently, § 544(a)(3) allows the Plaintiff to avoid the Option One Mortgage. In the Motion, the Defendants instead contend that state law determines whether a trustee is a BFP pursuant to § 544(a)(3). As constructive notice of the Option One Mortgage would be attributed to any purchaser under New York Real Property Law ("N.Y. RPL"), this type of legal notice forecloses any chance for a purchaser to be a BFP in New York State. As such, the Plaintiff may not avoid the Option One Mortgage pursuant to § 544(a)(3), entitling the Defendants to judgment as a matter of law.

Based on the plain meaning of § 544(a)(3), the Court agrees with the Defendants' conclusion. This Court finds that § 544(a)(3) cannot be read to create a new form of BFP but rather  grants the Trustee all the powers and rights of a BFP a subtle but critical distinction.  To adopt the trustees position would empower a trustee to avoid all recorded adverse interests in all

---

[1] The specific provisions of the Bankruptcy Code, set forth in 11 U.S.C. §§ 101–1532 inclusive, are referred to in this opinion as "section _" or "§ _" unless otherwise noted.

fifty states a preemptive application for which no textual support can be found. Rather, in accordance with longstanding traditions regarding the role of the states in defining and creating property rights, § 544(a)(3) recognizes that a party can only become a BFP by application of state law. Here, because constructive notice of the Option One Mortgage is imputed to all potential purchasers of the property pursuant to section 291 of N.Y. RPL, under New York State law there is no possibility of a party qualifying as a BFP and avoiding the subject lien. Since this construction of § 544(a)(3) is the only reading reasonably supported by this section's text and context, the Defendants' motion as to this issue will be granted.

The Court takes no position as to the enforceability of the Option One Mortgage, the significance of its allegedly flawed securitization, and the extent of the Plaintiff's other powers under the Code and applicable non-bankruptcy law.

## II.    JURISIDICTION AND AUTHORITY TO ENTER FINAL JUDGMENT

This Court has subject-matter jurisdiction of this core proceeding under 28 U.S.C. §§ 157(b) and 1334(a) and (b) and in accordance with the Standing Order of Reference of the Eastern District of New York dated August 28, 1986, and reconfirmed on December 5, 2012.

## III.    PROCEDURAL HISTORY

The Plaintiff commenced this adversary proceeding with the "Complaint to Avoid Mortgage Pursuant to 11 USC 544(a)(3), Quiet Title to Real Estate, and Avoid a Preference" (the "Complaint"). On August 23, 2012, the Defendants filed the Motion and a supporting memorandum of law. On September 10, 2012, the Plaintiff responded with his opposition to the Motion, and on September 13, 2012, he filed a further memorandum of law. On October 17,

2012, the Court held a hearing on the Motion and reserved decision.

## IV.    FACTS

The Option One Mortgage is a consensual lien secured by the Debtor's primary residence, located at 46 Yacht Club Road, Babylon, New York 11702 (the "Property"). Filed on December 19, 2011, the Debtor's Chapter 7 Bankruptcy Petition (the "petition") names American Home Mortgage, Inc., as the holder of the Option One Mortgage and Note in the amount of $368,499.89. The Option One Note and the Option One Mortgage, dated July 18, 2005, identify the mortgagee as Option One Mortgage Corporation and the mortgagor as the Debtor. Both documents were recorded at the Office of the County Clerk for Suffolk County, New York, on August 15, 2005, and properly listed and identified in the public land records. The Defendants assert and the Plaintiff concedes that this record exists, available for review by any prospective purchaser, and that the Option One Mortgage lies within the chain of title of the Property. Except for the Option One Mortgage, no evidence of any subsequent assignment, recorded in the proper clerk's office and dated prior to the Debtor's filing, has been submitted by the Defendants or uncovered by the Plaintiff. DBNTC has acknowledged its failure to record an assignment of mortgage.

In the two months following its perfection, the Option One Mortgage was purportedly twice transferred and securitized pursuant to the Pooling and Servicing Agreement ("PSA") submitted by Financial Assets Securities Corporation to the Securities and Exchange Commission ("SEC").[2] The originator, i.e. mortgagee, and the servicer of a surfeit of mortgages,

---

[2] The parties cited and referenced portions of the PSA. Defs.' Mot. Summ. J. Cindi Ellis Aff., ECF # 15, ¶ 6, at 3; Pl.'s Comp., ECF # 1, ¶ 14, at 3. The documents can be found in their entirety at http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001340328&action=getcompany.

Option One Mortgage Corporation, as this transaction's "seller," later sold the Option One

Mortgage and Note to Financial Asset Securities Corporation, which thereupon acquired a

second technical title: "the Depositor." Financial Asset Secs. Corp., Prospectus Supplement

(Form 424B5) S-4 (Sept. 28, 2005). Sometime between September 28, 2005, and September 30,

2005, the Option One Mortgage, as one of thousands of assets valued at $1.5 trillion, was

transferred to the Soundview Trust, a second type of special purpose vehicle ("SPV"), often

labeled a qualifying special purpose entity ("QSPE"), and the purported current owner of the

Option One Mortgage. Financial Asset Sec. Corp., Current Report (Form 8-K) Ex.-4.1 (Oct. 17,

2005). The PSA designated Defendant DBNTC as trustee and Defendant Option One Mortgage

Corporation, the original mortgagee, as servicer. Financial Asset Secs. Corp., Prospectus

Supplement (Form 424B5) S-4 (Sept. 28, 2005).


## V.    **DISCUSSION**

### ***Summary Judgment***

        Defendants' motion is subject to the standard set out in Federal Rule of Civil Procedure

56,[3] made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy

Procedure 7056. Fed. R. Bankr. P. 7056. Rule 56(a) provides that "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material"

fact is one that "might affect the outcome of the suit under the governing law." *Anderson v.*

---

This Court may take judicial notice of the content of public disclosure documents filed with the SEC and any related documents that bear on these disclosures' adequacy. Fed. R. Civ. P. 201(b)(2); *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991) (interpreting *id.*). These documents cannot and will not be regarded as proof that the transactions described therein took place. *Id.*

[3] All references to "Rule 56" refer to Rule 56 of the Federal Rules of Civil Procedure.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" dispute means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

As mandated by its plain language, Rule 56(c) requires that the party seeking summary judgment must first show that the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to the [nonmoving] party's case, and on which that party shall bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may cite to particular materials in the record, including the pleadings, depositions, answers, admissions, or affidavits, if any. Fed. R. Civ. P. 56(c)(1)(A); *Davis v. City of New York*, 316 F.3d 93, 100 (2d Cir. 2002). While summary judgment may be decided based only on the cited materials, a court may consider the total record. Fed R. Civ. P. 56(c)(3); *Asociación de Periodistas de Puertro Rico v. Mueller*, 680 F.3d 70, 79 n.6 (1st Cir. 2010). This Court is required to diligently construe the evidence in the light most favorable to the nonmoving party, drawing "all reasonable inferences in its favor." *Silverstein v. Penguin Putnam, Inc.*, 368 F.3d 77, 80 (2d Cir. 2004) (citations omitted), *cert. denied*, 543 U.S. 1039 (2004).

Once the movant has met its initial burden of proof, the nonmoving party must make a "sufficient showing" as to each "element of her case with respect to which she has the burden of proof" or which has been challenged by a movant's motion. *Celotex Corp.*, 477 U.S. at 323. Reliance on the pleadings is not enough, *Weinstock v. Columbia University*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003), and specific facts, sustained by "significantly probative evidence," are required, *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 88 (2d Cir. 2005) (applying the standard explained in *Anderson*, 477 U.S. at 249–50). The court should grant a motion for summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986), *cited in Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012). Even if material facts are unavailable to the non-movant, if a party fails to properly support a factual assertion, a court may grant summary judgment in those situations in which the motion and the supporting facts show the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e), *cited in Timbie v. Eli Lilly & Co.*, 429 Fed. Appx. 20, 23 (2d Cir. 2011).

Here, the Court is called upon to interpret (1) the Code, which is a federal statute, and provisions of N.Y. RPL and (2) to apply these statutes' plain meaning based on one material fact that neither of the parties contests: the recording and perfection of the Option One Mortgage in the Office of the Suffolk County Clerk prior to the Debtor's filing. Because the Defendants and the Plaintiff have themselves defined the relevant issue as a question of statutory construction, this dispute is particularly well-suited for resolution by summary judgment. *E.g.*, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (citing *Oklahoma ex rel. Dep't of Human Servs. v. Weinberger*, 741 F.2d 290, 291 (10th Cir. 1983)); *Stissi v. Interstate & Ocean Transport Co.*, 765 F.2d 370, 374 (2d Cir. 1985) (citations omitted), *cited in Arnold v. County of Nassau*, 252 F.3d 599, 602 (2d Cir. 2001).

### *Statutory Construction of § 544(a)(3)*

As in every case of statutory construction, this Court begins its task with the language of § 544(a)(3) itself. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685 (1985); *McMahan & Co. v. Wherehouse Entm't, Inc.*, 65 F.3d 1011, 1048 (2d Cir. 1995) (citing *id.*), *cert. denied*, 517 U.S. 1190 (1996). Left undefined in the Code, the pertinent statutory language—the phrase "bona fide purchaser of real property"—appears in the third subdivision of § 544(a):

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditors, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

This Court interprets all federal and state statutes according to their plain meaning. *Tyler v. Douglas*, 280 F.3d 116, 123 (2d Cir. 2001), *cert. denied*, 536 U.S. 906 (2002). In determining its degree of ambiguity or clarity, courts are obliged not to examine statutory language in isolation. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), *cited in Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005). Any court should consider the specific context in which that language appears and the statutory scheme's broader framework, striving to preserve the coherence and consistency of a statutory scheme. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41 (1989) (citing *Northern Pipeline Constrc. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52–53 (1982)). If plain, the language is dispositive and conclusive. *Carcieri v. Salazar*, 555 U.S. 379, 388 (2009). Ambiguity only exists so long as several plausible interpretations of the same statutory text, specific and different in substance, can be advanced. *See, e.g.*, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 566–67 (2005); *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108-09 (2d Cir. 2012).

Two exceptions to this duty generally exist: a court may choose not to apply the plain reading if it would clearly defeat the statute's obvious purposes, *e.g.*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982); *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 89 (2d Cir. 2002) (citations and internal quotations marks omitted), or lead to absurd

results, *e.g.*, *Blue Cross & Blue Shield v. AstraZeneca Pharms. LP (In re Pharms. Indus. Avg. Wholesale Litig.)*, 582 F.3d 156, 168 (1st Cir. 2009). Short of such patent inconsistency or absurdity, this Court is obligated to interpret "the Code clearly and predictably using well established principles of statutory construction." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073, 182 L. Ed. 2d 967 (2012). Only if these precepts fail to point to a precise meaning or purpose should a court consult pre-Code practice or legislative history. *Id.*; *FCC v. NextWave Pers. Commc'ns Inc.*, 527 U.S. 293, 305 (2003); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005) (citing *United States v. Dauray*, 215 F.3d 257, 262 (2d Cir. 2000)).

### *Statutory Text*

This Court does not find ambiguity in the language or the structure of § 544(a)(3). In ascertaining a statute's plain meaning, courts consistently apply the words' commonly understood meanings and diligently analyze a statute's linguistic structure. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 424 (2d Cir. 2005); *Kerin v. USPS*, 116 F.3d 988, 992 (2d Cir. 1997); *United States v. Weisser*, 417 F.3d 336, 348 (2d Cir. 2005) (citations omitted), *cert. denied*, 546 U.S. 971 (2005). The Plaintiff construes the language in this section as precisely equivalent to an automatic grant of BFP status, arguing that § 544(a)(3) elevates him to the position of a BFP upon the formation of the Debtor's estate pursuant to 11 U.S.C. § 541(a). Yet, as the grammatical observations below show, the statute does no such thing, for its language awards him merely "the rights and the powers" of a BFP. Enablement, not creation, is the statute's purpose.

Structurally, the term "bona fide purchaser of real property" does not appear in paragraph

three of § 544(a) as a complete sentence. In its present enacted form, it is incapable of being severed from this section's introductory lines and of standing independently as a self-contained idea. Instead, its placement in subdivision (3) of subsection (a) of § 544 marks it as a discrete yet dependent part of a larger whole, constituting a partial element of a larger idea. More simply, while § 544(a) indisputably encapsulates one complete idea—the trustee's "strong arm power," *Hamilton v. Wash. Mut. Bank FA (In re Colon)*, 563 F.3d 1171, 1173–74 (10th Cir. 2009) (citations omitted)—subdivision (3) incorporates the preposition "of" from § 544(a). Though two paragraphs separate the preposition "of" from the term "BFP," this section's structure thereby creates one prepositional phrase: "of a bona fide purchaser of real property," 11 U.S.C. § 544(a)(3). In the words of another court, which rejected prior rulings concluding that the phrase "rights and powers" in subsection (a) did not descend to subsection (a)(3), "the fact remains that there is no possible grammatical object for the preposition other than the bona fide purchaser." *Mayer v. United States (In re Reasonover)*, 236 B.R. 219, 229 (Bankr. E.D. Va. 1999) (disagreeing with *Mills v. Brown (In re Brown)*, 182 B.R. 778 (Bankr. E.D. Tenn. 1995), and *In re Mill Concepts Corp.*, 123 B.R. 938 (Bankr. D. Mass. 1991)). As a matter of common usage, this adjective phrase modifies its closest antecedent, the noun phrase "rights and powers" that it immediately follows. *See United States v. Godin*, 534 F.3d 51, 56 (1st Cir. 2001) (employing the same grammatical terms and utilizing the same grammar rules in interpreting 18 U.S.C. § 1028A(a)(1)); *see also* 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:26 (7th ed. 2012). Having utilized the same linguistic principles, this Court agrees with *In re Reasonover* in its conclusion: § 544(a)(3) confers upon a trustee "all the rights and powers of a bona fide purchaser." *Id.*  Taken literally, these words neither create a federal BFP nor convert a trustee into a BFP; § 544(a)(3) simply empowers a trustee generally and the Plaintiff here to exercise

"the rights and powers" of a hypothetical BFP.

To read § 544(a)(3) otherwise would render the words "powers and rights" unnecessary, as their sudden subtraction would leave the statute's purported meaning unchanged. Yet, as one rule has long dictated, *e.g.*, *Duncan v. Walker*, 533 U.S. 167, 174 (2001), statutory enactments must be read so as to give effect to every clause and word, *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 36 (1992). It would, moreover, have the effect of replacing the first verb in the introductory clause of §544(a)—"The trustee shall have"—with "shall be." Such a substitution, however, immediately reduces § 544(a)(3) to gibberish: "The trustee shall be . . . the rights and powers of . . . ." In fact, for the statute to be read as the Plaintiff wishes—"The trustee shall be . . . a BFP"—this Court would need to import an unfamiliar definition of the operative verb and dispense with Congress' adopted language. No court, however, has the powers to rewrite a statute in this fashion. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *Hanif v. Att'y Gen. of U.S.*, 694 F.3d 479, 483 (3d Cir. 2012) (quoting *Barrios v. Att'y Gen.*, 399 F.3d 272, 277 n.11 (3d Cir. 2005)).

This linguistic reasoning is buttressed by two other clauses in § 544(a) and another rule of statutory construction. As it immediately follows the term "a bona fide purchaser of real property . . . from the debtor," the restrictive clause "that obtains the status of a bona fide purchaser" refers to and restricts the meaning of its antecedent: "bona fide purchaser of real property." 11 U.S.C. § 544(a)(3); *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 836 (7th Cir. 2002) (citations omitted) (utilizing the last antecedent rule). Had the statute automatically granted a Code trustee the status of a BFP, this clause's initial portions would have to be regarded as superfluous. In fact, Congress would have had no need to state explicitly that its hypothetical purchaser "obtains the status of a bona fide purchaser . . . at the time of the

commencement of the case." 11 U.S.C. § 544(a)(3). The final phrase "at the time of the commencement of the case" would have been sufficient to brand the trustee a BFP upon the estate's creation, and the inclusion of the clause "that obtains . . ." after "debtor" in § 544(a)(3) would have been needless.

Similarly, if a trustee was mechanically transformed into a BFP by operation of § 544(a)(3), this section's first restrictive clause—"['The trustee'] . . . . may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . ['a bona fide purchaser of real property'],'" 11 U.S.C. § 544(a)—would be unnecessary. The reason is familiar, a consequence of applying the same rule already utilized in the analysis of the clause "that obtains" in § 544(a)(3): one of the inherent powers of a BFP is the ability to retain the purchased property regardless of any subsequent transfers by the property's original seller. *E.g.*, 14-82 POWELL ON REAL PROPERTY § 82.02(3)(c). Indeed, the common law had already read this ability into the phrase "bona fide purchaser of real property." *Id.* (summarizing the "common law principles" applicable in the absence of a recording act). Interpretations that render provisions pointless are to be avoided. *United States v. Anderson*, 15 F.3d 278, 283 (2d Cir. 1994) (citations omitted). The only interpretation of 544(a)(3) that achieves the Plaintiff's ends, however, manufactures precisely that result with regard to two of the clauses contained in § 544(a).

### Common Law Definition of "Bona Fide Purchaser of Real Property" as Plain Meaning

Beyond this "natural reading of the full text," the Court must take "a necessary second step" in ascertaining the plain meaning of § 544(a)(3): "Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense." *United States v. Wells*, 519 U.S. 482, 491 (1997)

(quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911)); *see also Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245 180 L. Ed. 131 (2011) (citations omitted). Generally, "[t]he rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific." *Midatlantic Nat'l Bank v. N.J. Dep't of Env't Prot.*, 474 U.S. 494, 501 (1986) (quoting *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 266-67 (1979)); *see also Kiobel v. Millson*, 592 F.3d 78, 89 (2d Cir. 2010) (Cabranes, J., concurring). When Congress employs terms with "a settled meaning under the common law" in a new law without explicitly redefining these familiar concepts, the courts will thus import the common law's customary meaning so long as no contrary congressional intent is evinced and no incoherence and inconsistency in the statutory scheme results. *United States v. Wells*, 519 U.S. 482, 491 (1997) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)).

This overriding presumption is closely related to a second principle that, when Congress uses a term of art, it normally adopts the accepted and specialized meanings of that term in the area of law the statute addresses or at common law. YULE KIM, STATUTORY INTERPRETATION: GENERAL PRINCIPLES AND RECENT TRENDS 18, 6–7 (Congressional Research Serv., 2008). In such cases, the accepted meaning governs, regardless of the everyday understanding of that term of art. *Sullivan v. Stroop*, 496 U.S. 478, 483 (1990); *see also FAA v. Cooper*, 132 S. Ct. 1441, 182 L. Ed. 2d 497 (2012) (citations omitted). With respect to the Code, the Supreme Court has declared that "we will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Pennsylvania Pub. Welfare Dep't v. Davenport*, 495 U.S. 552, 563 (1990); *see also, e.g. Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2011) (quoting *Community for Creative Non-Violence v. Reid*, 490 U.S. 730,

739–40 (1989)); *Szwak v. Earwood (In re Bodenheimer, Jones, Szwak, & Winchell L.L.P.)*, 592 F.3d 664, 673 (5th Cir. 2009) (citations omitted).

This Court therefore cannot ignore the fact that, decades before the Code's adoption, the common law had already ascribed a fixed meaning to the term "bona fide purchaser." Long before it ever appeared in § 544(a)(3), the common law had already defined "bona fide purchaser" as a party who paid valuable consideration for a property without actual or constructive notice of prior adverse claims and in good faith. BLACK'S LAW DICTIONARY 1355 (9th ed. 2009) (tracing its use to the eighteenth century). This common law understanding was so widespread that, when certain state recording acts that had codified the criteria for BFP status failed to make any mention of consideration, their highest courts nonetheless declared that such payment was implicitly required. *E.g.*, *Daniels v. Anderson*, 624 N.E.2d 1151 (Ill. App. Ct. 1993). Interpreting New York's Statute Concerning the Recording of Conveyances of Real Estate, one of this state's then highest two courts observed: "To have the advantage of a bona fide purchaser, a younger mortgage must both be taken in good faith, and be first recorded." *Fort v. Burch*, 5 Denio 187 (N.Y. Sup. Ct. 1848). Nearly fifty years before the enactment of § 544(a)(3), the New York Court of Appeals rejected a party's claim as "contrary to the *well-settled* principle that a purchaser takes with notice from the record only of incumbrances in his direct chain of title." *Buffalo Acad. of Sacred Heart v. Boehm Bros.*, 196 N.E. 42, 45 (N.Y. 1935) (emphasis added). If actual or constructive notice was available, the common law had thus defined "BFP" in such a way as to foreclose the possibility of a purchaser assuming such a position decades before the term materialized in § 544(a)(3).[4] *E.g.*, *First Nat'l Bank v. Nat'l*

---

[4] The Supreme Court has written that "although pre-Code practice informs our understanding of the language of the Code, it cannot overcome that language." *Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 10 (2000). This prohibition does not apply where the meaning

*Broadway Bank*, 51 N.E. 398, 401 (N.Y. 1898) (noting that a party could not be a BFP due to its

constructive notice of the adverse interest); *Kirsch v. Tozier*, 38 N.E. 375, 376 (N.Y. 1894)

(denying a party the status of a BFP as it "had constructive notice of every fact which could have

been ascertained by an inspection of the deeds, or mortgages").

Several circuits have responded to the absence of the phrase "for value" in § 544(a)(3) in

the same manner as our state counterparts. Thus, though the statute contains no more than the

phrase "a bona fide purchaser of real property," 11 U.S.C. § 544(a)(3), and though "for value"

was regarded as a critical definitional element of the latter term at common law, the Court of

Appeals for the Seventh Circuit construed § 544(a)(3) as allowing a trustee to presume the giving

of more than nominal consideration: "Section 544(a)(3) gives the Trustee the status of a bona

fide purchaser for value," *Belisle v. Plunkett*, 877 F.2d 512, 516 (7th Cir. 1989), *cert. denied*, 493

U.S. 893 (1989). Other courts have adhered to this plain construction with little, if any,

comment. *E.g.*, *Zaptocky v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1027 (6th

Cir. 2001); *In re Tleel*, 876 F.2d 769, 772 (9th Cir. 1989). Few discussed the basis for reading a

statute completely silent on the issue of value as having allowed a trustee to presume payment of

more than nominal consideration. *E.g.*, *MidAtlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d

195, 204 n.7 (3d Cir. 1994); *Anderson v. Conine (In re Robertson)*, 203 F.3d 855, 864 (5th Cir.

2000) (citations omitted). No extended justification for this expansion of the statutory text

seemed necessary, for the term "bona fide purchaser of real property" had already accumulated a

certain meaning at common law: "To entitle a purchaser to the protection of a court of equity . . .

he must be a purchaser for a valuable consideration, that is, for value paid." *Weaver v. Barden,*

---

of a term is clear from the text or relevant context, which includes a term's common law history.
*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296–97 (2006) (citing *id.* and
relying on a term of art in its analysis of the plain meaning of 11 U.S.C. § 1415(i)(3)(B)).

49 N.Y. 286, 291 (N.Y. 1872).

As the foregoing shows, since Congress enacted 544(a)(3) without defining "BFP," this Court may take it as a given that it legislated with the expectation that the familiar principle of the common law will apply. The Plaintiff, however, now asks this Court to read § 544(a)(3) as having granted him the status of a BFP due solely to his position as a bankruptcy trustee. True, the Code allows a trustee to presume perfection at the time of filing and lack of actual knowledge, thereby overriding parts of the familiar principle. 11 U.S.C. § 544(a); *Realty Portfolio v. Hamilton (In re Hamilton)*, 125 F.3d 292, 299 (5th Cir. 1997). Yet, Congress expressed this preemptive purpose explicitly and made no equally clear statement of unambiguous intent as to every aspect of the common law's definition of a BFP. Due to this silence, one that holds particular relevance in the field of bankruptcy, *see BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994), the Court may not disregard this term's common law past. That background makes clear that, in order to become a BFP, a purchaser must first prove those definitional elements not expressly overridden by Congress by the text or the clear import of § 544(a). *See In re Balco Quities Ltd.*, 2006 Bankr. LEXIS 5055, at *26-28 (Bankr. S.D.N.Y. Mar. 28, 2006); 11 U.S.C. § 544(a), (a)(3).

### Relevance of Other Code Sections

Other sections of title 11 undermine the Plaintiff's interpretation and support this Court's textual analysis. While a party may be tempted to read § 544(a)(3) without reference to the Code's other provisions, a court may not do so, and an argument that has force only if read in isolation is to be rejected. *Chamber of Comm. of U.S. v. Whiting*, 131 S. Ct. 1968, 1999, 179 L. Ed. 2d 1031 (2011); *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). The "whole

act" rule of statutory construction demands that a court read a section of a larger statute "not in isolation from the context of the whole Act" but "look to the provisions of the whole law." *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (quoting *Richards v. United States*, 369 U.S. 1, 11 (1962)), *cert. denied*, 533 U.S. 904 (2001); *see also Mendez v. Holder*, 566 F.3d 316, 321 (2d Cir. 2009) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

In particular, where it has sought to create legally cognizable categories, the Code uses precise and revealing verbs. Thus, § 323(b) provides that "[t]he trustee in a case under this title *is* the representative of the estate," and § 541(a) states that "[t]he commencement of a case under section 301, 302 or 303 of this title *creates* an estate." 11 U.S.C. §§ 323(b) (emphasis added), 541(a) (emphasis added). By means of a plain verb, § 541(a) explicitly brings into being a new legal body. Similarly, § 323(b) makes a bankruptcy trustee into the estate's representative. By using "is" rather than "has," it gives a trustee a specified legal identity and all its inherent powers, not simply the capability to act as a representative of the estate in all legal matters. Had Congress intended to grant its trustee the status of a BFP, it presumably would have done so by employing the same language used in § 541(a) and § 323(a); however, Congress did not do so. Absent the use of verbs like "is" or "creates," § 544(a)(3) cannot be construed as turning the Plaintiff into a BFP, only as awarding him the powers and rights of such a purchaser as defined by state practice and regulation.

### *Overriding Presumptions*

This interpretation is also consistent with the basic federal rule that, while the Code defines "the creation, alteration or elimination of substantive rights," *Branchburg Plaza Assocs., L.P. v. Fesq (In re Fesq)*, 153 F.3d 113, 116 (3d Cir. 1998), *cert. denied*, 526 U.S. 1018 (1999),

"state law governs the substance . . . Congress having generally left the determination of property rights in the assets of the bankrupt's estate to state law," *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (citations omitted); *see also, e.g.*, *Stern v. Marshall*, 131 S. Ct. 2594, 2616, 180 L. Ed. 2d 475 (2011); *Americredit Fin. Servs., Inc. v. Tompkins*, 604 F.3d 753, 757–58 (2d Cir. 2010). As to traditional state regulation over real property and particularly as to "titles of real estate," whether in the form of "contrary state law or prior practice," the Code "will be construed to adopt, rather than displace, pre-existing state law" where Congress' "intent to override is doubtful." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 546, 544–45 (1994) (citations and internal quotation marks omitted).

In a seminal case, the Court of Appeals for the Third Circuit employed similar reasoning when it sought to define "knowledge" in the context of § 544(a)(3). *McCannon v. Marston*, 679 F.2d 13, 16 (3d Cir. 1982). Although the Code itself was silent as to the meaning of this common word, the Third Circuit concluded: "[I]n our view Congress could not have intended" to allow a trustee to ignore principles of constructive notice under governing state law upon a trustee's appointment. *Id.* By allowing a trustee to initiate adversary proceeding to avoid valid, perfected interests in a debtor's real property, such an interpretation would nullify all state law protections of holders of equitable interests. *Id.* Such a purpose to preempt all state laws regarding recordation and notice, thereby "granting . . . a substantial additional mantle of power not available to any actual subsequent purchaser in Pennsylvania" to a bankruptcy trustee, was not one "to be lightly inferred." *Id.* Given a choice between an interpretation of § 544(a)(3) that "obliterat[ed] the rights of equitable owners in possession of real property" under state law and one that exempted the trustee only from the consequences of his actual knowledge of an adverse interest, the Third Circuit chose the former, preserving the states' traditional role. In reaching

this conclusion, *McCannon* anticipated the Supreme Court's own explicit rejection of an analysis of a Code section that would have placed "[t]he title of every piece of realty purchased at foreclosure . . . under a federally created cloud" and disturbed the balance of "our dual system of government." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994) (citations and internal quotation marks omitted).

In the last three decades, this relatively narrow interpretation of the word "knowledge" in 544(a)(3) was widely adopted by numerous federal courts. *E.g.*, *In re Lee*, 461 Fed. Appx. 227, 237 (4th Cir. 2012) (citing, among others, *Havee v. Belk*, 775 F.2d 1209, 1218–19 (4th Cir. 1985)); *Realty Portfolio v. Hamilton (In re Hamilton)*, 125 F.3d 292, 299 (5th Cir. 1997); *In re Probasco*, 839 F.2d 1352, 1354–55 (9th Cir. 1988); *In re Sandy Ridge Oil, Inc.*, 807 F.2d 1332, 1336 (7th Cir. 1986), *cited in Kennedy Inn Assocs. v. Perab Realty Corp. (In re Kennedy Inn Assocs.)*, 221 B.R. 704, 712 n.2, 713 (Bankr. S.D.N.Y. 1998) (collecting cases). The decisions in the Second Circuit have been no different. *E.g.*, *Chemical Bank v. Coan*, 2 Fed. Appx. 180, 184 (2d Cir. 2001), *cert. denied*, 535 U.S. 928 (2002) (applying Connecticut's law regarding constructive notice); *Webb v. O'Neil (In re Webb)*, 1999 U.S. App. LEXIS 14959, at *4–5 (2d Cir. July 2, 1999) (relying upon Connecticut law's definition of a BFP)). Similarly, as to another federal statute, the Second Circuit has recently opined that whether a party is "a good faith purchaser for value" is "a question of New York state law." *CFTV v. Walsh*, 658 F.3d 194, 199 n.4 (2d Cir. 2011) (per curiam). In light of the overwhelming weight of precedent, without some sufficient, countervailing justifications or an obviously unworkable law, the *McCannon* court's interpretation of § 544(a)(3) is not to be lightly disturbed, as in the cases of statutory rather than constitutional interpretation "the legislative power is implicated, and Congress remains free to alter what . . . [the courts] have done." *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S.

197, 202 (1991) (citation omitted); *see also, e.g.*, *United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1841, 182 L. Ed. 2d 746 (2012). Until Congress clearly disavows the courts' known reading, *Patterson v. McLean Credit Union*, 491 U.S. 164, 172–73 (1989) (citations omitted), "longstanding and well-entrenched decisions, especially those interpreting statutes that underlie complex regulatory regimes" like the Code, bind this Court. *Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA (In re Northwest Airlines Corp.)*, 483 F.3d 160, 169, n.2 (2d Cir. 2007) (citations omitted).

This precedent places the Plaintiff's argument in its proper light. When he requests that this Court appraise § 544(a)(3) as preempting every aspect of state common law as to the prerequisites of BFP status, he is not simply advancing a creative interpretation of the statutory text based on a smattering of cases and pre-Code practices. He is also requesting that this Court reject, in defiance of Supreme Court precedent, a fundamental precept of bankruptcy law that Congress has never unambiguously disavowed in the four paragraphs that constitute § 544(a). He is too asking that this Court set aside an interpretation of § 544(a)(3) endorsed in countless judicial decisions in the last three decades. If Congress intended the kind of § 544(a)(3) that the Plaintiff envisions, "then . . . [Congress] should amend the statute to conform to its intent." *Lamie v. United States Trustee*, 540 U.S. 526, 542 (2004). In the meantime, it is not for this Court to undertake such revision.

### *The Plaintiff's Reliance on* In re Bridge:

The Plaintiff alleges that his interpretation of § 544(a)(3) is supported by a case from the Court of Appeals for the Third Circuit. *Midatlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 194 (3d Cir. 1994). The Plaintiff's argument, however, overlooks pertinent facts that make the

Third Circuit's holding inapposite to this proceeding. Briefly stated, the mortgage sought to be avoided pursuant to § 544(a)(3) in *In re Bridge* was a second, unrecorded lien; in the clerk's office, the relevant record indicated that a first mortgage had existed and had been cancelled prior to the debtor's filing. *Id.* at 204 n.8. In *In re Bridge*, the public record thus gave no indication of a relevant lien's existence. *Id.* In contrast, the Option One Mortgage, the adverse interest that the Plaintiff seeks to avoid in this proceeding, was indisputably recorded, while a certificate of neither satisfaction nor cancellation was ever presented to the County Clerk and recorded in accordance with applicable New York State law.[5] In this case, the Option One Mortgage appears in the chain of title. In addition, the Plaintiff misconstrues that court's legal reasoning, presenting its conclusion as its preliminary assumption. Only after the Third Circuit analyzed and concluded that no purchaser could have obtained constructive notice of that unrecorded second mortgage under New Jersey State law did it turn to § 544(a)(3). As it had done eleven years earlier in *McCannon*, it began its analysis of § 544(a)(3) with the applicable state property law, relying on the decisions of the New Jersey Supreme Court and the New Jersey Court of Errors and Appeals. *Id.* at 203–04. As *In re Bridge* is distinguishable by virtue of its reasoning and facts from the present case, the Plaintiff's reliance on this decision is misplaced.

### *Conclusion as to the Meaning of § 544(a)(3)*

In this Court's view, while a trustee is deemed to lack actual notice of an adverse interest, to have paid more than nominal consideration, and to have perfected its interest on the date of a debtor's filing as a result of the explicit text or unambiguous implication of § 544(a)(3),

---

[5] N.Y. RPL § 321 regulates the recording of mortgage discharges.

applicable state law nonetheless defines whether an imaginary BFP can ever exist as a matter of both state and federal law. Section 544(a)(3) thus compels this Court to determine whether any purchaser could satisfy the elements for BFP status under the state laws governing the Property that were not preempted by its explicit text. If no such purchaser can be hypothesized under the applicable law, no trustee can be a BFP pursuant to § 544(a)(3). Accordingly, this Court now turns to N.Y. RPL to determine whether, under the uncontested facts of this case, a hypothetical buyer could claim and prove itself to be a BFP.

### *N.Y. RPL § 291*

Two provisions of New York law protect a bona-fide purchaser: N.Y. RPL § 266 (which states that the title of a purchaser for consideration is not affected unless the purchaser had prior notice of fraud) and N.Y. RPL § 291 (stating that a bona-fide purchaser of real property take free of unrecorded interests). N.Y. RPL §§ 266, 291. The language in N.Y. RPL § 291 has been interpreted to encompass assignments of mortgages, *e.g.*, *Merscorp, Inc. v. Romaine*, 861 N.E.2d 81, 82 (N.Y. 2006); *Andy Assocs., Inc. v. Bankers Trust Co.*, 399 N.E.2d 1160, 1166 (N.Y. 1979), and to require that a purchaser prove an absence of "actual or constructive notice" as an implied component of "good faith," *E.g.*, 2 WARREN'S WEED N.Y. REAL PROP. 15.03; *Baccari v. De Santi*, 70 A.D.2d 198, 201 (2d Dep't 1979).

Under New York law, constructive notice of an adverse interest, including a mortgage, will be implied if a purchaser would have uncovered that interest's existence through (1) an examination of the county record as to the subject property, (2) reasonable inquiry of those in

actual possession, or (3) reasonable inquiry on the basis of all known circumstances.[6] *E.g.*, *In re Bygaph, Inc.*, 56 B.R. 596, 602–03 (Bankr. S.D.N.Y. 1986) (collecting and interpreting state and federal cases). Unlike actual notice, constructive notice is a legal fiction and leads to the imputation of knowledge of all facts, if apparent in the county record or likely to have been disclosed during a diligent inquiry, to any purchaser. *See Robertson v. Peters (In re Weisman)*, 5 F.3d 417, 421 (9th Cir. 1993). If no purchaser could have failed to acquire constructive notice of the Option One Mortgage pursuant to New York RPL, no entity may claim to be a BFP. *E.g.*, *In re Minto Grp.*, 27 B.R. 385, 388 (Bankr. S.D.N.Y. 1983); *In re Balco Quities Ltd.*, 2006 Bankr. LEXIS 5055, at *26–28 (Bankr. S.D.N.Y. Mar. 28, 2006). Accordingly, unless constructive notice of the Option One Mortgage was unattainable, the Plaintiff cannot exercise the rights and powers of a BFP under § 544(a)(3), for a BFP can never exist under N.Y. RPL § 291.

In New York, a good faith purchaser is deemed to have constructive notice of any deed or instrument properly recorded. *Fairmont Funding, Ltd. v. Stefansky*, 301 A.D.2d 562, 563–64 (2d Dep't 2003); *see also In re Lasercad Reprographics, Ltd.*, 106 B.R. 793, 802 (Bankr. S.D.N.Y. 1989) (citations omitted). A valid mortgage, if properly indexed, becomes "part of the record of each instrument hereafter recorded." N.Y. RPL § 316-a. A purchaser of real property is required to exercise "due diligence in examining the title." *HSBC Mortg. Servs., Inc. v. Alphonso*, 58 A.D.3d 598, 600 (2d Dep't 2009). If this purchaser fails to do so, that purchaser is chargeable "as a matter of law, with notice of the facts which a proper inquiry would have disclosed." *Id.* Thus, until the mortgage is either cancelled or struck from the county's record, any purchaser will be presumed to have legally sufficient knowledge of every instrument in the chain of title. *E.g.*, *Board of Directors of Hill & Dale Homeowners Ass'n v. Cappello*, 852 N.Y.S.2d 586 (2d Dep't

---

[6] This New York definition of constructive notice actually incorporates two distinct forms: constructive and inquiry. 14-82 POWELL ON REAL PROPERTY § 82.02(1)(d)(ii), (iii).

2007) (citing *Fairmont Funding, Ltd.*, 301 A.D.2d at 564); *Tibby v. Fletcher*, 13 A.D.3d 877,

879 (3d Dep't 2004); *see also Andy Assocs., Inc. v. Bankers Trust Co.*, 399 N.E.2d 1160, 1166

(N.Y. 1979).

      Based on this case law, the parties' admissions have already settled the issue: no

purchaser could lack constructive notice of the Option One Mortgage due to its recording and

perfection in August 2005, seven years prior to the Debtor's filing. As such, no buyer could

purchase the Debtor's property without New York State courts presuming the buyer's knowledge

of the Option One Mortgage and therefore denying that purchaser's effort to assert the powers

and rights of a BFP. *See, e.g.*, *O'Connell v. JP Morgan Chase Bank Assoc.*, 2012 U.S. Dist.

LEXIS 175388, at *7 (E.D.N.Y. Feb. 2012); *Goldstein v. Gold*, 106 A.D.2d 100, 101–02 (2d

Dep't 1984). Since these uncontested facts render it impossible to conjecture a purchaser capable

of satisfying RPL § 291, no BFP can exist under state law.[7] As a result, the Plaintiff, as a trustee

who gains no more powers than those of a hypothetical BFP under state law, cannot utilize the

powers and rights of a BFP pursuant to § 544(a)(3). *In re Euro-Swiss Int'l Corp.*, 33 B.R. 872,

892 (Bankr. S.D.N.Y. 1983). In accordance with N.Y. RPL § 291, the Plaintiff will not be

allowed to avoid the Option One Mortgage pursuant to § 544(a)(3).


**V.**    <u>**CONCLUSION**</u>

      The natural reading of 11 U.S.C. § 544(a)(3), its placement within the Code, and the

applicable substantive canons all lead to the same conclusion: § 544(a)(3) does not achieve

complete preemption of state laws regarding recordation and notice, as the Plaintiff has argued,

---

[7] In his papers, as an addition to his statutory argument, the Plaintiff contends that he has
satisfied the requirements of N.Y. RPL. In this Court's view, this argument lacks merit, as all the
relevant sections' implicitly require that a purchaser lack "actual or constructive notice."

and instead codifies a common law term in federal law, preempting that common law understanding in only three ways. It thereby incorporated those definitional elements of BFP status set out by state regulations and common law and awarded a trustee no more—and no less—than the powers and rights of a bona fide purchaser of real property. As written, § 544(a)(3) does not convert the trustee into a BFP; rather, it assigns the estate's representative the capacity to act as a BFP so long as such a purchaser can be conjectured in accordance with the state law governing a debtor's property. Here, since the constructive notice imputed to all purchasers of the Debtor's property pursuant to N.Y. RPL § 291 of the Option One Mortgage makes it impossible for any possessor to claim to be a BFP even in theory, this Court concludes that the Plaintiff cannot exercise the rights and powers of a hypothetical BFP pursuant to § 544(a)(3).

For the aforementioned reasons, this Court will therefore grant the Motion. An order and judgment memorializing the Court's decision shall be entered forthwith.

Dated:    Central Islip, New York
            January 24, 2013           ***/s/ Robert E. Grossman***
                                     The Honorable Robert E. Grossman
                                     United States Bankruptcy Judge